UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RESEARCH AMERICA, INC.,

        Plaintiff,

    v.                                    23-CV-320-LJV-HKS
                                           DECISION & ORDER

PETER SIMPSON, et al.,

        Defendants.

_____

On March 22, 2023, Research America, Inc. ("RAI"), commenced this action in New York State Supreme Court, Erie County, against defendants Peter Simpson, Donna Simpson, and Segmedica, Inc. ("Segmedica"). Docket Item 1-4. RAI alleges that the Simpsons violated restrictive covenants they signed when they sold their company, Segmedica, to RAI and joined RAI as employees. *Id.* More specifically, RAI says that the Simpsons solicited clients, performed market research activities, infringed RAI's trademark, and attempted to divert corporate opportunities from RAI, all in violation of the restrictive covenants. *See id.* at ¶¶ 65, 96, 110, 128-29, 151; Docket Item 59-1 at 11.[1]

After a temporary restraining order ("TRO") was entered in state court, *see* Docket Item 1-29, the defendants removed the action to this Court, *see* Docket Item 1. This Court extended the TRO, Docket Item 6, received briefing on RAI's request for a preliminary injunction, Docket Items 16 and 21, and referred the case to United States

---

[1] Page numbers in docket citations refer to ECF pagination.

Magistrate Judge H. Kenneth Schroeder, Jr., for an evidentiary hearing on the preliminary injunction motion, Docket Item 26.  The parties then consented to converting the TRO into a preliminary injunction that would expire on August 31, 2024.  See Docket Items 38 and 40.

Based on information since learned in discovery, RAI now has moved for an order extending the preliminary injunction to April 17, 2025.  Docket Item 59.  The defendants have opposed this motion, Docket Item 63, and RAI has replied, Docket Item 65.  On September 19, 2024, the Court heard oral argument addressing the extension motion as well as two other motions filed by RAI.  Docket Item 69.  At that time, this Court extended the preliminary injunction through October 31, 2024, so that it could more carefully consider the arguments raised by both sides.  Docket Item 70.

For the following reasons, this Court denies RAI's motion to extend the preliminary injunction.  The preliminary injunction currently in place will expire on October 31, 2024.

**FACTUAL BACKGROUND**[2]

RAI is "a worldwide full-service market research firm" that conducts "data acquisition and analysis," marketing consulting, and "quantitative and qualitative

---

[2] The following facts are taken from RAI's complaint, Docket Item 1-4, as well as the declarations and exhibits filed by RAI in support of its first request for injunctive relief, Docket Item 1-29, the defendants' response to that motion, Docket Item 16, the filings by RAI in support of the instant motion to extend the preliminary injunction, Docket Item 59, and the defendants' response, Docket Item 63.  See Park Irmat Drug Corp. v. Optumrx, Inc., 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." (citation omitted)).  Where the facts essential to a court's decision are not in dispute and the existing record provides a sufficient basis for its decision, an evidentiary hearing is not required to decide a motion for a

analytics." Docket Item 1-4 at ¶ 15. Segmedica "was formerly a marketing research firm" that offered similar services; Peter and Donna Simpson owned Segmedica.[3] *Id.* at ¶¶ 17, 19.

On December 30, 2020, "RAI entered into [an] Asset Purchase Agreement" (the "APA") with the Simpsons and Segmedica "to purchase substantially all of [Segmedica's] assets." *Id.* at ¶ 20. The APA provided that the defendants would "sell . . . and deliver . . . an agreed-upon set of assets"—including "tangible assets, intellectual property, intangible assets, and contracts" (collectively, the "purchased assets")—to RAI. *Id.* at ¶ 22. The purchased assets included "certain . . . client and project information generated by Segmedica in connection with work previously performed" for Fresenius Medical Care Holdings, Inc. ("Fresenius"). *Id.* at ¶¶ 9-10, 23. Of note, the purchased assets also included the email domain "@segmedica.com" and the "[d]efendants' book of business." *Id.* at ¶¶ 25-26.

After the APA was executed, the Simpsons joined RAI as employees and agreed to be bound by "certain restrictive covenants," which provided, in key part:

> [T]hat during the period commencing on the Closing Date and ending on the second (2nd) anniversary of the last day the [Simpsons] are employed by [RAI], [each of the Simpsons] . . . shall not directly own, operate, or control any business that engages in any market research activity that is

---

preliminary injunction. *See Meisels v. Meisels*, 630 F. Supp. 3d 400, 415-16 (E.D.N.Y. 2022).

[3] RAI has sued Peter Simpson, Donna Simpson, and Segmedica. Docket Item 1-4. However, RAI does not allege any wrongful conduct on the part of Segmedica itself, which it acknowledges does not have any officers or agents other than the Simpsons. *Id.* at ¶ 5. This Court therefore uses the term "the defendants" solely in reference to parts of the action's procedural history or where the underlying facts involve both Segmedica and the Simpsons.

> similar to [Segmedica's] business as of the Closing Date. [The Simpsons and Segmedica] shall not directly or indirectly, anywhere in the world:
>
> (i) engage or participate, directly or indirectly, in any business competitive with the Business;[4]
>
> (ii) become interested (as owner, stockholder, lender, partner, co-venturer, director, officer, employee, agent, consultant, or otherwise) in any portion of the business of any Person where such portion of such business is competitive with the Business (other than as a passive investor holding less than 2% of an interest in any such Person);
>
> (iii) solicit, cause to be solicited, aid in the solicitation of, call on or transact or engage in any direct business activity, for a purpose competitive with the Business; or
>
> (iv) solicit any [RAI] employee for other employment or contract work competitive with the Business.

Docket Item 1-5 at 11-12; *see* Docket Item 1-4 at ¶ 28.

During their time as RAI employees, the Simpsons led a newly created "Segmedica Division" that "carr[ied] on Segmedica's work." Docket Item 59-9 at ¶ 3. The Simpsons were RAI employees until August 15, 2022. Docket Item 63-2 at ¶ 19; Docket Item 63-3 at ¶ 17. They then worked for RAI as independent contractors until October 31, 2022, when any employment or consulting relationship between the Simpsons and RAI ceased. *See* Docket Item 63-2 at ¶ 20; Docket Item 63-3 at ¶ 18.

Before the APA was signed, the defendants had an existing business relationship with non-party Fresenius that was governed by a master services agreement (the "Fresenius MSA"). Docket Item 1-4 at ¶ 32. The Fresenius MSA was "included as a contract purchased by RAI as part of the APA." *Id.* at ¶ 35. Under the Fresenius MSA, Segmedica (and later RAI) performed marketing research for Fresenius in "waves."

---

[4] The APA defines "the Business" as the Simpsons' "marketing research business." Docket Item 1-5 at 3.

*See id.* at ¶¶ 33, 38-40. The "waves" were part of an "ongoing project with Fresenius" under which Segmedica, and later RAI, would "develop[] . . . survey questions, administ[er] . . . the survey[,] . . . analy[ze] the results, and present[] . . .the results to the designated Fresenius team." Docket Item 59-9 at ¶¶ 5-6.

While they were employees of RAI, the Simpsons "prepared and presented the proposal for the Fresenius Wave 4 project on RAI's behalf." Docket Item 1-4 at ¶ 47. Fresenius approved that project proposal in August 2022 and defendant Donna Simpson signed an accompanying "[s]tatement of [w]ork" on RAI's behalf, Docket Item 1-4 at ¶ 49, although the parties disagree about the extent of the Simpsons' contemplated role in the Fresenius Wave 4 project.[5]

After the Fresenius Wave 4 proposal was approved but before work could begin, RAI underwent "a full audit of [its] operations as they pertained to any Fresenius projects." *Id.* at ¶¶ 57, 59. RAI alleges that this audit was the direct result of a surreptitious campaign by the Simpsons, who had been "disingenuously questioning the integrity of RAI's data collection practices to Fresenius" to "sow doubt and damage the reputation and credibility of RAI." *Id.* at ¶¶ 54-56. According to RAI, the Simpsons did this so that they could "divert[] the Fresenius Wave 4 [p]roject" for "themselves and their business affiliates." *Id.* at ¶ 56. After the audit was completed, Fresenius informed RAI that "due to internal pressures at Fresenius," the Fresenius Wave 4 project "could not be performed in the fourth quarter of 2022." *Id.* at ¶ 62.

---

[5] RAI alleges that the Simpsons were "expected to be involved in" the Fresenius Wave 4 Project, Docket Item 1-4 at ¶ 48, while the Simpsons claim that they "were largely excluded" from the project "[i]n the latter part of 2022," Docket Item 16-4 at ¶ 15; Docket Item 16-5 at ¶ 15—that is, toward the end of the Simpsons' time at RAI.

RAI alleges that in December 2022, it learned that the Simpsons "had opened a new business called 'Sarasota Ventures,'" which offered market research services. *Id.* at ¶¶ 64-65. RAI sent the Simpsons a cease-and-desist letter demanding that they comply with the restrictive covenants, return any proprietary information they had downloaded and kept during their time at RAI, and return a laptop that belonged to RAI. *Id.* at ¶ 67. The Simpsons "denied engaging in any competitive activity but . . . agreed to take down their website and promised to abide by their non-compete, non-solicit, and confidentiality obligations to RAI." *Id.* at ¶ 68. The Simpsons also returned the laptop. *Id.* at ¶ 72.

In March 2023, a Fresenius employee sent an email referring to a meeting to discuss the results of the Fresenius Wave 4 project to two email addresses: donna.simpson@sarasotaventures.com and Peter Simpson's @segmedica.com email address (which "was set up to automatically forward to RAI"). *Id.* at ¶¶ 73-75; *see also* Docket Item 1-8 (the March 2023 email). RAI alleges that it then learned "that the Simpsons had performed Wave 4 through their own private company, Sarasota Ventures, in violation" of the restrictive covenants signed as part of the APA. Docket Item 59-9 at ¶ 23. RAI commenced this action a short time later. Docket Item 1-4.

## **PROCEDURAL BACKGROUND**

As noted above, RAI sued Segmedica and the Simpsons in New York State Supreme Court. Docket Item 1-4. In addition to the numerous claims raised in the complaint, RAI sought a preliminary injunction. *Id.* at 25-26. On March 24, 2023, New York State Supreme Court Justice Emilio Colaiacovo issued a TRO ordering the defendants to comply with the provisions of the APA, to stop soliciting RAI's clients, to

6

return any RAI property, to stop using or disclosing RAI's confidential and proprietary information, and to stop using RAI's trademarks. Docket Item 1-29. The defendants then removed the action to this Court on April 10, 2023. Docket Item 1.

This Court extended the TRO until oral argument on June 2, 2023. Docket Item 6. Following oral argument, an evidentiary hearing on RAI's motion for a preliminary injunction was scheduled and the parties agreed to extend the TRO until the hearing was held. *See* Docket Item 36. But before the hearing date, both sides agreed to convert the TRO into a preliminary injunction that would expire on August 31, 2024—more than two years after the end of the Simpsons' time as RAI employees. *See* Docket Items 38 and 40.

As a result of this agreement, there has not yet been a ruling on the merits of RAI's first motion for a preliminary injunction. Limited document discovery has been exchanged, but there have been no depositions. *See* Docket Item 65 at 12 & n.8.

Before the preliminary injunction was to expire on August 31, 2024, RAI moved to extend it until April 17, 2025. Docket Item 59. In that motion, RAI alleged that documents identified in discovery showed that the Simpsons continued to breach the restrictive covenants until at least April 17, 2023, and RAI argued that the APA entitled it to two full years free from competition. According to RAI, these documents show that the Simpsons had agreed with Fresenius to provide services through their Sarasota Ventures entity "[a]s early as August 13, 2022"; in fact, RAI says, the documents evidence a formal proposal to perform the Fresenius Wave 4 project through Sarasota Ventures in October 2022. Docket Item 59-1 at 9.

RAI argues that the Simpsons also "wrongfully" took a "survey draft . . . from RAI's systems prior to the end of their work for RAI on October 31, 2022." *Id.* at 10. And RAI alleges that the Simpsons used RAI's resources, namely the PersonaSmart tool acquired via the APA, to "divert" another client, Myovant Sciences, Inc. ("Myovant"), to Sarasota Ventures during this same time period. *Id.* at 11. In fact, RAI says, the documents show that the Simpsons continued to violate the restrictive covenants at least until April 17, 2023, as evidenced by an email sent to a Fresenius marketing executive to set up a meeting to discuss a readout done as part of the Fresenius Wave 4 project. *Id.* at 9-10.

The defendants oppose the motion, but they consented to extending the preliminary injunction until the Court could hear oral argument. Docket Item 61. For their part, the Simpsons do not deny that after their separation from RAI they performed work for Fresenius. But they say that the work involved Donna Simpson's providing "project management services *only* for another full[-]service marketing research agency's performance of the next wave." Docket Item 63-2 at ¶ 40. Because "Segmedica and RAI only provided full[-]service marketing research services to Fresenius" both before and after the APA, the defendants say, that work did not breach the restrictive covenants. *See* Docket Item 63-3 at ¶ 33. The defendants also allege that any contact with Myovant concerned a similar project management role and that no business relationship was ever diverted. *Id.* at ¶ 51.

As noted above, at the oral argument on RAI's motion, the Court extended the preliminary injunction through October 31, 2024, Docket Item 70, two years after any

8

connection between the Simpsons and RAI ended.  *See* Docket Item 63-2 at ¶ 20; Docket Item 63-3 at ¶ 18.

## **LEGAL PRINCIPLES**

"A preliminary injunction is an equitable remedy and an act of discretion by the court."  *ACLU v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  Indeed, it "'is an extraordinary remedy never awarded as of right' and 'is one of the most drastic tools in the arsenal of judicial remedies.'"  *Rochester Drug Co-Operative, Inc. v. Hiscox Ins. Co.*, 466 F. Supp. 3d 337, 348 (W.D.N.Y. 2020) (first quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008); then quoting *Hanson Tr. PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).

"A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest."  *ACLU*, 804 F.3d at 622 (citing *Winter*, 555 U.S. at 20).  In the Second Circuit, a court may issue a preliminary injunction where a plaintiff demonstrates "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction."  *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183-84 (2d Cir. 2019) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009)).  "[A] party seeking to extend a preliminary injunction must establish its entitlement to relief."  *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 143 (2d Cir. 2005).

**DISCUSSION**

I. **LIKELIHOOD OF SUCCESS ON THE MERITS**

RAI alleges that the purported breaches of the restrictive covenants identified via the discovery process make it "likely to succeed on the merits of its breach of contract claims."[6]  Docket Item 59-1 at 13 (capitalization altered).  In fact, RAI says, such "facts are undisputed" and so "clearly constitute a breach of the [r]estrictive [c]ovenants" that the Court does not even need to conduct an evidentiary hearing to determine whether the Simpsons breached their restrictive covenants.  Docket Item 65 at 5.  The Simpsons, on the other hand, dispute that there is proof that they breached the restrictive covenants; in fact, they say that "[t]he sole purpose of this extension request is to punish" them.  Docket Item 63-1 at 9-13.

This Court disagrees with RAI that the Simpsons' alleged breach of the restrictive covenants is undisputed.  The affidavits submitted in connection with RAI's motion to extend the preliminary injunction reveal several material issues of fact, including the extent to which any project management services performed by the Simpsons competed with RAI, *compare* Docket Item 59-9 at ¶ 23 ("[T]he Simpsons . . . performed Wave 4 through their own private company, Sarasota Ventures, in violation of the APA's restrictive covenants.") *with* Docket Item 63-2 at ¶ 40 ("[Donna Simpson] submitted a proposal to Fresenius for the performance of project management services *only* for another full[-]service marketing research agency's performance of" the Fresenius Wave

---

[6] RAI's memorandum in support of its initial motion for preliminary injunctive relief asserted that it was likely to succeed on the merits of its claims for breach of contract and trademark infringement.  Docket Item 1-26.  RAI's current motion to extend the preliminary injunction does not refer to its claims for trademark infringement.

10

4 project), and whether Peter Simpson used RAI resources to divert Myovant as a client, *compare* Docket Item 59-9 at ¶¶ 26-27 (alleging that, following a meeting with Myovant to demonstrate RAI's PersonaSmart tool, Peter Simpson "arranged for the Simpsons to provide Myovant services through Sarasota Ventures instead of through RAI") *with* Docket Item 63-3 at ¶ 45 (Peter Simpson's statement that he "did not utilize any of RAI's resources to divert Myovant as they were never a client of RAI's").[7]

This Court need not and does not reach any conclusion as to RAI's likelihood of success on the merits, however: Because RAI has not satisfied its burden of showing that it will suffer irreparable harm without an order extending the preliminary injunction until April 17, 2025, it is not entitled to the relief it seeks. *See Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*, 618 F. Supp. 2d 256, 266 (E.D.N.Y. 2009) (citing *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)); *see also Vargas v. Viacom Int'l, Inc.*, 366 F. Supp. 3d 578, 584 (S.D.N.Y. 2019) (stating that when a party fails to demonstrate "irreparable harm in the absence of an injunction, the remaining requirements for a preliminary injunction need not be addressed").

---

[7] The parties also disagree about the propriety of RAI's proposed remedy under New York law, which the APA is "governed by and construed in accordance with." Docket Item 1-5 at 14. Because this Court denies RAI's motion to extend the preliminary injunction, it need not decide that issue. Nevertheless, the Court observes that courts across the country differ on whether a court can extend the term of a contractually bargained for restrictive covenant based on a breach of that covenant. *See Aladdin Cap. Holdings, LLC v. Donoyan*, 2011 WL 2293236, at *3 (D. Conn. June 8, 2011) (comparing Connecticut, Ohio, and Texas law). This Court has not identified, and neither party cites, any conclusive guidance on this issue from the New York Court of Appeals, the "ultimate arbiter of New York law." *United States v. Morrison*, 686 F.3d 94, 104 (2d Cir. 2012).

11

## II.     IRREPARABLE HARM

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rochester Drug Co-Operative*, 466 F. Supp. 3d at 349 (quoting *Faiveley Transp.*, 559 F.3d at 118). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling*, 295 F.3d at 214 (internal quotation marks omitted). "And[] irreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.* "A preliminary injunction cannot be issued based on past harm."[8]  *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997).

Despite RAI's assertion "[t]hat [the] same potential for irreparable harm exists now as it did in July 2023" when this Court extended the TRO, Docket Item 59-1 at 13, the irreparable harm analysis has changed. "Generally, when a party violates a [reasonable] non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm for purposes of imposing a preliminary injunction." *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 194 (E.D.N.Y. 2013) (alteration in original) (quoting *Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*, 468 F. App'x 43, 46 (2d Cir. 2012) (summary order)). But even though, when it first brought suit, RAI faced the imminent loss of client relationships and customer good will that the non-compete clause was designed to protect, the two-year period covered by the restrictive covenants has now passed. So RAI has gotten the

---

[8] An evidentiary hearing is not required for a court to decide whether a party has sufficiently established irreparable harm.  See *Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 984 (2d Cir. 1997).

benefit of its bargain, and any injury from the alleged breach—including injury that might continue as the result of a breach—can be addressed by damages.

During the two years since the Simpsons ceased their relationship with RAI, RAI has had the opportunity to build new client relationships and maintain existing ones.  In fact, RAI itself acknowledges that the purpose of the restrictive covenants was "to provide the Segmedica Division [of RAI with] sufficient time to establish lasting relationships with its clients should the Simpsons ever leave."  Docket Item 59-9 at ¶ 13.  RAI presumably has spent the two years since October 2022 cementing its relationships with its clients, undercutting the concerns of lost client relationships and customer good will typically cited by courts in connection with preliminary injunctions to enforce non-compete agreements.  And any efforts that were unsuccessful because of the defendants' breach can be remedied by providing RAI with damages for what it lost.

Indeed, while RAI claims that the irreparable harm "is the loss of client relationships, which will produce an indeterminate amount of business," Docket Item 59-1 at 13 (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999)), it repeatedly cites the Simpsons' alleged theft of one project, the Fresenius Wave 4 project, as justification for extending the preliminary injunction.[9]  Any losses associated with that project can readily be ascertained and compensated through money damages.  *Cf. Ecosave Automation, Inc. v. Del. Valley Automation, LLC*, 540 F. Supp. 3d 491, 507 (E.D. Pa. 2021) ("Any loss of goodwill and/or interference with customer relationships

---

[9] RAI also points to the alleged "usurpation" of a business opportunity with Myovant in support of its motion to extend the preliminary injunction.  Docket Item 59-1 at 11.  However, it does not appear that Myovant ever was Segmedica's or RAI's client.  *See id.* (describing Myovant as "a potential client"); Docket Item 63-3 at ¶ 42 ("Myovant was never a client of Segmedica pre-acquisition or RAI.").

that occurred in this matter is now squarely in the past. . . . Any harm to [the plaintiff's] reputation or relationships has already occurred and can properly be compensated for with monetary damages."). And to the extent that other damages from the alleged breach might be more difficult to calculate, that in and of itself is no reason to grant the extraordinary remedy of an injunction, especially because "almost every contract breach will generate some consequential damages that are difficult to calculate." *See United Retail Inc. v. Main St. Mall Corp.*, 903 F. Supp. 12, 14 (S.D.N.Y. 1995) (citation omitted) (finding irreparable harm not established); *see also CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010) (summary order) ("That damages are difficult to measure does not necessarily make otherwise compensable harm irreparable.").

In sum, if RAI did not get the full two years of non-competition that it bargained for and proves that the Simpsons did in fact breach the restrictive covenants, it may seek money damages to redress this injury. But the period of court-ordered non-competition, like any non-permanent injunction, must at some point come to an end. And under the circumstances here, this Court finds that the point is two years after the relationship between RAI and the Simpsons ended.

## **CONCLUSION**

For the reasons noted above, RAI's motion to extend the preliminary injunction is DENIED, and the preliminary injunction currently in place will expire on October 31, 2024.

SO ORDERED.

Dated:   October 31, 2024
         Buffalo, New York

                                         **/s/ Lawrence J. Vilardo**
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE