UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RESEARCH AMERICA, INC.,

       Plaintiff,

   v.

PETER SIMPSON et al.,

       Defendants.

23-CV-320-LJV
DECISION & ORDER

On August 5, 2024, the plaintiff, Research America, Inc. ("RAI"), moved to extend the preliminary injunction issued against the defendants, Peter Simpson, Donna Simpson, and Segmedica, Inc., that was set to expire on August 31, 2024. *See* Docket Item 59. In connection with that motion, RAI sought to seal two supporting exhibits that consist of documents produced by two non-parties, Fresenius and Myovant. *See* Docket Item 60. After that motion to seal was granted, Docket Item 61, RAI asked to seal two other exhibits filed in connection with its reply in further support of its motion to extend the preliminary injunction, Docket Item 66. Like the exhibits submitted with the first motion to seal, those exhibits consist of documents that were produced during discovery by two non-parties, this time Fresenius and Purdie Pascoe. *See id.*

After more carefully reviewing both sealing motions, the Court concluded that RAI had not given the Court information sufficient to satisfy Local Rule of Civil Procedure 5.3(a), which provides that "documents are [presumptively] publicly accessible" and that "[a] party seeking to have a . . . document[ ] or portion of a document filed under seal bears the burden of demonstrating that such material should

be sealed under applicable law." *See* Docket Item 74 (quoting Loc. R. Civ. P. 5.3(a)). The Court therefore ordered RAI to show cause why the documents covered by the two motions to seal "should not be unsealed." *Id.*

In response to that order, RAI narrowed the scope of its sealing requests. *Compare* Docket Items 60 and 66 (first and second sealing motions), *with* Docket Item 79 (RAI's response to Court's order to show cause). Instead of seeking to seal all the documents to which its two sealing motions refer, RAI now seeks to keep under seal only parts of two documents filed in support of its motion to extend the preliminary injunction, Docket Items 59-7 and 59-8; parts of another document filed with its reply, Docket Item 65-2; and one other document filed with its reply in its entirety, Docket Item 65-3. *See* Docket Item 79 at 5.[1] More specifically, RAI's sealing request is now limited to 1) specific pages of a document that contains the defendants' formal work proposal to perform market research known as the "ATU Wave 4" project for non-party Fresenius, Docket Item 59-7 at FMC000000036-46; 2) specific pages of a document that contains RAI's "PersonaSmart questions," Docket Item 59-8 at SMPA0000346.1-346.3; and 3) two presentations (one in draft form) of a report prepared in connection with that project (the "ATU Wave 4 Report"), Docket Items 65-2 at pages 4-121 (presentation) and 65-3 (draft presentation). *See* Docket Item 79 at 5, 14.[2]

---

[1] The Court ultimately denied RAI's motion to extend the preliminary injunction. Docket Item 80.

[2] Page numbers in docket citations refer to ECF pagination.

2

For the reasons that follow, the Court concludes that RAI has shown good cause under the applicable standard, and the sealing of the documents and excerpts identified in its response to this Court's order is justified.

## DISCUSSION

Under Local Rule of Civil Procedure 5.3(a), "parties, complaints, and documents are [presumptively] publicly accessible," and "[a] party seeking to have a case, party, complaint, document, or portion of a document filed under seal bears the burden of demonstrating that such material should be sealed under applicable law." That rule is consistent with the longstanding "'presumption of access' to judicial records," which is rooted in the Constitution as well as the common law. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006)); *see also United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government.").

To determine whether a right of access attaches to a filing, the court must first decide whether the record at issue constitutes a "judicial document." *Bernstein*, 814 F.3d at 140-41. The Second Circuit has explained that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access"; instead, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).

If a court determines that a filing is a "judicial document[ ]," that document may be sealed only "if a sufficiently compelling countervailing interest is demonstrated," see *United States v. King*, 2012 WL 2196674, at *1-2 (S.D.N.Y. June 15, 2012) (citing *Lugosch*, 435 F.3d at 120) (common law standard), and if the court makes "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest," *id.* at *2 (quoting *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 13-14 (1986)) (First Amendment standard).

As an initial matter, the Court agrees with RAI's concession, Docket Item 79 at 7, that the documents in question are judicial in nature and therefore enjoy some presumption of public access. *See Sylvania v. Ledvance*, 2021 WL 412241, at *1 (S.D.N.Y. Feb. 5, 2021) (concluding that a brief, supporting declarations, and exhibits filed in connection with preliminary injunction motion were "plainly judicial documents"). But it is also true that unlike "[m]aterials submitted in connection with a motion for summary judgment," which enjoy "a strong presumption of public access[,]" "materials submitted in connection with . . . non-dispositive motions are subject to a lesser—but still substantial—presumption of public access." *Brown v. Maxwell*, 929 F.3d 41, 53 (2d Cir. 2019). Accordingly, the documents RAI asks the Court to keep under seal, materials submitted in connection with a non-dispositive motion to extend a preliminary injunction, enjoy "a lesser—but still substantial—presumption of public access." *See id.*

RAI argues that countervailing interests overcome that "lesser—but still substantial—presumption of public access[,]" as the relevant documents include information "that could cause competitive harm to [RAI] or the producer if released publicly," Docket Item 79 at 5. More specifically, as discussed in greater detail below,

4

RAI says that its PersonaSmart questions and analysis are proprietary and, furthermore, that those questions derive their value from not being known publicly.  *See generally id.* at 7-10.  Moreover, according to RAI, the disclosure of the two presentations and work proposal would harm non-party Fresenius by eliminating the competitive advantage it gained from commissioning the relevant market research project.[3]  *See generally id.*; Docket Item 79-5.

The Court turns first to the "PersonaSmart questions" and the presentation "contain[ing] the results of a PersonaSmart analysis," Docket Item 59-8 at SMPA0000346.1-346.3 and Docket Item 65-2 at pages 4-121.  As RAI notes in its amended complaint, it is a "market research firm" offering a range of services that include "data acquisition and analysis."  Docket Item 71 at ¶ 19.  Its services revolve around PersonaSmart, which is "a personality-based segmentation model of consumers that . . . employs a series of proprietary confidential questions and interpretive tools to group potential customers into accessible segments."  *Id.* at ¶ 31.  According to RAI, those "segments allow[] . . . customers to make better informed decisions about their product and service offerings to the end consumers."  *See id.* at ¶¶ 31-32.[4]  "The value of the PersonaSmart questions derives from [their] not being known to the public."  *See*

---

[3] RAI also notes that certain slides from the final presentation contain "the results of a PersonaSmart analysis."  *See* Docket Item 79 at 9.  As discussed below, the "PersonaSmart analysis" is intertwined with the "PersonaSmart questions."  RAI does not seem to argue that the potential competitive harm it could suffer justifies sealing "the results of a PersonaSmart analysis."  *See id*.  But because much of the same reasoning RAI offers for sealing the "PersonaSmart questions" applies to "the results of a PersonaSmart analysis," the Court will address whether the latter should remain under seal due to the potential competitive harm their unsealing would have on RAI.

[4] RAI acquired PersonaSmart from the defendants.  *See* Docket Item 71 at ¶¶ 24-30.

Docket Item 79 at 9.  RAI further notes that questions included in surveys help form the basis of a subsequent proprietary analysis.  *Id.*

"The demonstration of a valid need to protect the confidentiality of sensitive business information . . . may be a legitimate basis to rebut the public's presumption of access to judicial documents."  *Valassis Cmmc'ns, Inc. v. News Corp.*, 2020 WL 2190708, at *1 (S.D.N.Y. May 5, 2020).  "Courts will seal 'business information that might harm a litigant's competitive standing in the market'" and "will commonly grant a company's request for sealing of 'proprietary business information, such as internal analyses, business strategies, or customer negotiations' when disclosure of that information could 'provide competitors with an unearned advantage.'"  *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, 2022 WL 890184, at *2 (S.D.N.Y. Mar. 25, 2022) (first quoting *New York v. Actavis, PLC*, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014), then quoting *SEC v. Telegram Grp., Inc.*, 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020)).

Although the PersonaSmart questions and analysis are not "internal analyses, business strategies, or customer negotiations," the Court can understand how, given the specific nature of RAI's business, their disclosure could harm RAI's business and market competitiveness.  As a market research firm, RAI provides value for its clients by researching customer preferences using proprietary questions and analysis.  *See* Docket Item 79 at 9 ("The value of the PersonaSmart questions derives from not being known to the public such that only [RAI] and [the d]efendants, who originally created the PersonaSmart questions, could include the PersonaSmart questions in a client survey and subsequently perform the PersonaSmart analysis.").  Revealing the specific

6

questions RAI asks and the results of the subsequent analysis would certainly seem likely to provide its competitors with an unearned advantage.  *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts."); *cf. Playtex Prods., LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (sealing "highly proprietary material" that included "market research" (quoting *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011)).

Given the "lesser" presumption of public access enjoyed by these documents, the Court concludes that RAI has sufficiently demonstrated that the sealing of the "PersonaSmart questions," Docket Item 59-8 at SMPA0000346.1-346.3, and the presentation containing "the results of a PersonaSmart analysis," Docket Item 65-2 at pages 4-121,[5] is justified.

The portions of the documents containing the relevant work proposal, Docket Item 59-7 at FMC000000036-46, and presentation, Docket Items 65-2 at pages 4-121, along with the draft presentation, Docket Item 65-3, likewise implicate the market standing and competitive standing of non-party Fresenius.  As a representative from Fresenius declared in support of the request to keep those documents sealed, the work proposal contains the sums of money that Fresenius is willing to pay for such services.  *See* Docket Item 79-5 at ¶ 20.  And according to that representative, if such information

---

[5] The Court notes that "the results of a PersonaSmart analysis" only appear in certain pages of the presentation.  *See* Docket Item 79 at 9.  But because, as discussed below, other countervailing interests—the competitive standing and privacy interests of non-party Fresenius—also justify the sealing of the entire presentation, this fact does not change the Court's conclusion that the sealing of the entire presentation is justified.

7

were disclosed to the public, outside vendors "will have a strategic advantage in future bids, proposals, and offers for similar work." *See id.*

Moreover, the two presentations were also part of a research project Fresenius conducted "to better understand the medical market in which [it] operate[s] and learn information that can help [it] improve as a company." *See id.* at ¶¶ 10, 18. Along the same lines, the presentations themselves include the results of that project which, according to the Fresenius representative, the company uses "internally to improve [its] business and respond to the participants in the market." *See id.* at ¶¶ 12, 18.

The two presentations thus contain the results of an extensive research project that Fresenius undertook to determine how to position itself to customers. Unsealing those documents could allow competitors to gain access to that information—information that Fresenius paid to obtain—free of charge. *See W.J. Deutsch & Sons Ltd.*, 2022 WL 890184, at *2. In light of those interests and the privacy concerns of third parties that can outweigh the public's presumptive right of access, *see King Pharms., Inc. v. Eon Labs, Inc.*, 2010 WL 3924689, at *9 (E.D.N.Y. Sept. 28, 2010) ("Privacy interests of non-parties resisting disclosure may weigh heavily against public access to the information at issue."),[6] the Court concludes that RAI has also established sufficient countervailing interests to overcome the "lesser" presumption of public access the two presentations and work proposal enjoy.

---

[6] The draft presentation that RAI seeks to seal, Docket Item 65-3, was actually produced not by Fresenius, but by Purdie Pascoe, another non-party to this action. *See* Docket Item 79 at 10. Purdie Pascoe, which produced the draft presentation only after it had been "assured that certain confidentiality provisions were in place," *id.*, also likely has a privacy interest in the draft presentation's remaining under seal.

In sum, RAI has identified "sufficient[] . . . countervailing interest[s]" to justify sealing the four specific excerpts and documents that it identified in response to this Court's order. *See King*, 2012 WL 2196674, at *2. Moreover, RAI's current sealing proposal, which is narrower than its initial proposal, is "narrowly tailored" to serve those interests. *See id*. For those reasons, the sealing of those four excerpts and documents is justified.[7]

## CONCLUSION

For the reasons stated above, RAI has shown good cause as to why sealing the following documents is justified: Docket Item 59-7 at FMC000000036-46, Docket Item 59-8 at SMPA0000346.1-346.3, Docket Item 65-2 at FMC000000548,[8] and Docket Item 65-3. The Court will file Docket Item 65-3 and an unredacted version of Docket Item 65-2 under seal. The Court previously filed under seal unredacted versions of Docket Items 59-7 and 59-8, *see* Docket Item 64, and those documents will remain sealed. RAI shall file redacted versions of Docket Items 59-7, 59-8, and 65-2 on the docket within 14 days of the date of this decision and order. RAI's second motion to seal, Docket Item 66, is therefore GRANTED IN PART.

---

[7] Because the Court concludes that sealing the four documents is justified under the applicable standard, it need not address RAI's separate argument that unsealing the documents would unfairly modify the protective order. *See* Docket Item 79 at 10-16.

[8] "FMC000000548 consists of Docket [Item] 65-2 from pages 4-121." Docket Item 79 at 5 n.2.

SO ORDERED.

Dated: December 5, 2025
        Buffalo, New York

                                              */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE